IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER SMITH,

          Plaintiff,

vs.                                        Case No. 14-1197-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.   The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.   Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.   Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.   Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).   The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.   Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).   The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th
Cir. 1993).  At step five, the burden shifts to the
Commissioner to show that the claimant can perform other work
that exists in the national economy.  Nielson, 992 F.2d at 1120;
Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The
Commissioner meets this burden if the decision is supported by
substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On March 1, 2013, administrative law judge (ALJ) Guy E.
Taylor issued his decision (R. at 12-21).  Plaintiff alleges
that he had been disabled since April 6, 2011 (R. at 12).
Plaintiff meets the insured status requirements for social
security disability benefits through December 31, 2016 (R. at

4

12).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since April 6, 2011, the alleged
onset date (R. at 14).  At step two, the ALJ found that
plaintiff had severe physical and mental impairments (R. at 14).
At step three, the ALJ determined that plaintiff's impairments
do not meet or equal a listed impairment (R. at 14).  After
determining plaintiff's RFC (R. at 16), the ALJ determined at
step four that plaintiff was unable to perform past relevant
work (R. at 19).  At step five, the ALJ found that plaintiff can
perform other jobs that exist in significant numbers in the
national economy (R. at 20).  Therefore, the ALJ concluded that
plaintiff was not disabled (R. at 21).

**III.  Did the ALJ err by failing to consider the medical opinions of Dr. Poppa?**

    In the ALJ's RFC findings, the ALJ found that plaintiff can
lift and carry 10 pounds frequently and 20 pounds occasionally;
plaintiff can sit for 4 hours and stand/walk for 4 hours in an 8
hour workday.  Plaintiff cannot climb ladders, scaffolding or
ropes or crawl, and he can only occasionally climb stairs,
balance, stoop, kneel and crouch.  Per plaintiff's testimony, he
can frequently reach, handle and finger with either or both
upper extremities.  He is limited to simple, unskilled work of
an SVP of 2 or less, secondary to short-term memory and mental

impairments.  He can have only occasional contact with coworkers
and supervisors due to his adjustment disorder (R. at 16).

    Plaintiff alleges his onset date of disability was April 6,
2011 (R. at 12).  On February 2, 2010, Dr. Poppa performed an
independent medical examination on the plaintiff (R. at 334-
340).  In his findings, Dr. Poppa opined that plaintiff could
lift no more than 20 pounds from floor to waist level on an
occasional basis, no lifting greater than 10 pounds from waist
to shoulder height on an occasional basis, and no overhead work
involving either shoulder.  Dr. Poppa further opined that
plaintiff should avoid repetitive waist bending, twisting or
stooping greater than on an occasional basis.  Finally, pushing,
pulling and carrying should be limited to 20 pounds on an
occasional basis (R. at 339-340).

    The ALJ did not mention this opinion from Dr. Poppa, which
is contained in the record.  An ALJ must evaluate every medical
opinion in the record.  Hamlin v. Barnhart, 365 F.3d 1208, 1215
(10th Cir. 2004).  This rule was recently described as a "well-
known and overarching requirement." Martinez v. Astrue, 2011 WL
1549517 at *4 (10th Cir. Apr. 26, 2011).  Even on issues
reserved to the Commissioner, including plaintiff's RFC and the
ultimate issue of disability, opinions from any medical source
must be carefully considered and must never be ignored.  Social
Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ

"will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion. Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

Defendant argues that the ALJ was not required to discuss this medical opinion evidence because it predates the alleged onset date by over 1 year, and thus is not "significantly probative" evidence that the ALJ was required to discuss (Doc. 12 at 7). However, as noted above, an ALJ must evaluate every

medical opinion in the record.  Hamlin v. Barnhart, 365 F.3d 1208, 1215(10th Cir. 2004).  Even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to claimant's medical history and should be considered by the ALJ.  Id.  In Hamlin, the court found that the ALJ failed to adequately consider the opinions of two physicians whose opinions covered a five year period preceding the relevant period of the claimant's current application.  Id. at 1213, 1216-1220.  Later, the court noted other medical reports, stating that while these medical reports date from an earlier adjudicated period, they are nonetheless part of claimant's case record and should have been considered by the ALJ.  Id. at 1222, n. 15.  As the court indicated in Hamlin, the Commissioner will evaluate every medical opinion that he receives.  20 C.F.R. § 404.1527(c).

    In the case of Lackey v. Barnhart, 127 Fed. Appx. 455, 458 (10th Cir. April 5, 2005), the Commissioner argued that a medical record was irrelevant to the period under review because the opinions were expressed several months before the alleged onset date of plaintiff's disability.  The court, citing to Hamlin, stated that "no authority is cited for the proposition that medical reports prior to the operative onset date are

8

categorically irrelevant, and, indeed, our precedent is to the contrary" Id.

Furthermore, the ALJ considered the opinion of another consultative medical examiner, Dr. Wheeler, who evaluated plaintiff on October 21, 2009 (R. at 19, 266-271). As noted by the ALJ, Dr. Wheeler opined that plaintiff could perform modified duties of no lifting greater than 20 pounds (R. at 19, 271). As the ALJ noted, although the report of Dr. Wheeler was "remote in time," the ALJ accorded it "significant weight" (R. at 19). In fact, the report by Dr. Wheeler was 1 ½ years prior to the alleged onset date, and predated the report of Dr. Poppa, which was approximately 3 ½ months after the examination and report by Dr. Wheeler. An ALJ cannot give significant weight to an opinion 1 ½ years before the alleged onset date, but then, without explanation, ignore a medical opinion 14 months before the alleged onset date.

The court must next consider whether the failure to consider this report by Dr. Poppa could be deemed harmless error. As noted by the plaintiff, Dr. Poppa's opinion differs in large part because Dr. Poppa stated that plaintiff could not engage in any overhead work involving either shoulder (Doc. 11 at 14); the ALJ stated that plaintiff could frequently reach (R. at 16). However, at the hearing, the vocational expert (VE) was asked if the jobs identified by the VE as jobs that plaintiff

could perform given his RFC could still be performed if he had
an additional limitation of "no reaching above shoulder level
with the bilateral upper extremities" (R. at 60).  The VE
testified that all of the jobs would still be available, and
that the number of jobs would not be reduced at all (R. at 60).

Plaintiff notes that the three jobs identified by the VE
and found by the ALJ to be jobs that plaintiff could perform
require frequent reaching.  Although plaintiff acknowledges that
the VE testified that those jobs could be performed even with a
limitation of no overhead reaching, plaintiff argues that the VE
testimony conflicts with the Dictionary of Occupational Titles
(DOT), noting that the Selected Characteristics of Occupations
(SCO) defined in the DOT defines reaching as reaching in all
directions (SCO, Appendix C at C-3), Doc. 11 at 14.

In the case of Segovia v. Astrue, 226 Fed. Appx. 801, 804
(10th Cir. March 23, 2007), the court held as follows:

> Both the ticket-taker and cafeteria-
> attendant positions require..."frequent"
> reaching, see SCO §§ 09.05.02, 09.05.08;
> Aplt.App. at 439, 446, while Ms. Segovia is
> limited to occasional overhead reaching. For
> purposes of the SCO, however, "reaching" is
> defined as "[e]xtending hand(s) and arm(s)
> in any direction." SCO at C-3 (emphasis
> added). **The SCO does not separately classify
> overhead reaching. Thus, under the SCO, even
> a job requiring frequent reaching does not
> necessarily require more than occasional
> overhead reaching. The VE was aware of Ms.
> Segovia's limitations on overhead reaching,
> and he testified both that she could perform**

**the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. Aplt.App. at 391-92, 395. In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.** See Carey v. Apfel, 230 F.3d 131, 146 (5th Cir.2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, ... the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.... [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation."). Further, the DOT descriptions for cafeteria attendant and ticket taker do not indicate that these jobs predominantly involve overhead reaching rather than other types of reaching. See DOT §§ 311.677-010, 344.667-010; Aplt.App. at 437, 445.

(emphasis added).  Thus, even though the ALJ should have considered the opinions of Dr. Poppa, the failure to do so is harmless error given that the additional limitation on overhead reaching set forth by Dr. Poppa would not diminish the job base found by the VE and included in the ALJ's decision.

**IV.  Are the ALJ's mental RFC findings supported by substantial evidence?**

The ALJ found that plaintiff was limited to simple, unskilled work, and can have only occasional contact with coworkers and supervisors due to his adjustment disorder (R. at 16).  Plaintiff notes that, at step two, the ALJ found that

plaintiff had moderate difficulties in social functioning (R. at

15), but failed to explain why the RFC findings only included

limitations to interaction with coworkers and supervisors, and

not people in general (R. at 16; Doc. 11 at 15).

    According to SSR 96-8p:

> The psychiatric review technique described
> in 20 CFR 404.1520a and 416.920a and
> summarized on the Psychiatric Review
> Technique Form (PRTF) requires adjudicators
> to assess an individual's limitations and
> restrictions from a mental impairment(s) in
> categories identified in the "paragraph B"
> and "paragraph C" criteria of the adult
> mental disorders listings. The adjudicator
> must remember that the limitations
> identified in the "paragraph B" and
> "paragraph C" criteria are not an RFC
> assessment but are used to rate the severity
> of mental impairment(s) at steps 2 and 3 of
> the sequential evaluation process. The
> mental RFC assessment used at steps 4 and 5
> of the sequential evaluation process
> requires a more detailed assessment by
> itemizing various functions contained in the
> broad categories found in paragraphs B and C
> of the adult mental disorders listings in
> 12.00 of the Listing of Impairments, and
> summarized on the PRTF.

1996 WL 374184 at *4.  Thus, the PRTF form is used to determine

the severity of a mental impairment at steps 2 and 3 of the

sequential evaluation process, while a mental RFC assessment

form is used to determine a claimant's RFC at steps 4 and 5.

    The ALJ made findings at step two in the four broad areas,

which are only for the purpose of rating the severity of a

mental impairment at steps 2 and 3 of the sequential evaluation

process.  These findings are not an RFC assessment.  The mental
RFC assessment used at steps 4 and 5 of the sequential
evaluation process requires a more detailed assessment.

At step two, the ALJ found that plaintiff had moderate
difficulties with social functioning (R. at 15).  In his RFC
findings, the ALJ found that plaintiff is limited to simple,
unskilled work, and can have only occasional contact with
coworkers and supervisors due to his adjustment disorder (R. at
16).

Dr. Bean performed a consultative evaluation of plaintiff
on July 5, 2011 (R. at 390-393).  He opined that while
plaintiff:

> tends to function in a more solitary fashion
> he would appear to have the capability of
> developing and maintaining relationships
> adequate for a work environment.

(R. at 393).  The ALJ's RFC determination that plaintiff only
have occasional contact with coworkers and supervisors due to
his adjustment disorder appears consistent with the opinions
expressed by Dr. Bean.  If anything, the ALJ tempered the
opinions of Dr. Bean, and the state agency consultants, Dr.
Cohen and Dr. Frantz,[1] in plaintiff's favor by including a
limitation to occasional contact with coworkers and supervisors.
An ALJ does not commit reversible error by tempering medical

---

[1] Neither Dr. Cohen or Dr. Frantz included any social interaction limitations in their reports (R. at 76, 91).

opinions given substantial weight by the ALJ for the claimant's benefit.  The ALJ does not have to provide an explanation for extending the claimant such a benefit.  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).  Plaintiff fails to point to any medical opinion evidence that clearly indicates that plaintiff's RFC should have included a further limitation regarding contact with people or the public.  The court finds no error in the ALJ's mental RFC findings.

## V.  Are the ALJ's credibility findings supported by substantial evidence?

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v.

Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,
206 F.3d 1368, 1372 (10th Cir. 2000).   Furthermore, the ALJ need
not discuss every relevant factor in evaluating pain testimony.
Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).   An
ALJ must therefore explain and support with substantial evidence
which part(s) of claimant's testimony he did not believe and
why.   McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir.
2002).   It is error for the ALJ to use standard boilerplate
language which fails to set forth the specific evidence the ALJ
considered in determining that a claimant's complaints were not
credible.   Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir.
2004).   On the other hand, an ALJ's credibility determination
which does not rest on mere boilerplate language, but which is
linked to specific findings of fact fairly derived from the
record, will be affirmed by the court.   White, 287 F.3d at 909-
910.

     The court will not reweigh the evidence or substitute its
judgment for that of the Commissioner.   Hackett v. Barnhart, 395
F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d
903, 905, 908, 909 (10th Cir. 2002).   Although the court will
not reweigh the evidence, the conclusions reached by the ALJ
must be reasonable and consistent with the evidence.   See Glenn
v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must
affirm if, considering the evidence as a whole, there is

sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ discussed plaintiff's statements and testimony, reviewed the medical evidence, and concluded that the medical evidence and the medical opinion testimony do not support plaintiff's allegations of disability.  The ALJ noted inconsistencies between plaintiff's allegations and the medical evidence.  Plaintiff does not cite to any medical opinion evidence that plaintiff has limitations not included in the ALJ's RFC findings.  The medical evidence and the medical opinion evidence provide a reasonable basis for finding plaintiff's allegations of disability not fully credible. Furthermore, the court finds no clear error in the ALJ's credibility analysis, and the court will not reweigh the evidence.  The court finds that the balance of the ALJ's credibility analysis is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 19th day of August 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge